# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

MARK W. LAMAR,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )          No. 4:21-CV-00773-WJE
                                        )
KILOLO KIJAKAZI,                        )
Acting Commissioner of Social Security, )
                                        )
                    Defendant.          )

## ORDER

Plaintiff Mark W. Lamar seeks judicial review[1] of a final administrative decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1382–1385. For the reasons that follow, the Court reverses and remands the decision of the Acting Commissioner for further consideration and development of the record.

## I. Background

Mr. Lamar protectively filed a claim for DIB and SSI on July 3, 2019. (AR 14). He alleged an amended disability onset date of February 1, 2018, due to a traumatic brain injury, memory loss, posttraumatic stress disorder, spinal injuries, vision loss, vision sensitivity, neck immobility, migraines, anxiety, depression, insomnia, neck pain, and muscle spasms. (*Id.* 14, 306). His claims were initially denied on January 30, 2020. (*Id.* 14). He filed a written request for hearing before an Administrative Law Judge ("ALJ"), which was held on October 5, 2020. (*Id.*).

---

[1] With the consent of the parties, this case was assigned to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

On February 19, 2021, the ALJ denied Mr. Lamar's claims in a written decision. (*Id.* 11-28). The ALJ determined that although Mr. Lamar had severe impairments, including a traumatic brain injury, degenerative disc disease, right hand fractures, arthritis, anxiety disorder, depressive disorder, and posttraumatic stress disorder, none of them met or exceeded a listed impairment. (*Id.* 17-21). She also determined that Mr. Lamar retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 hours and stand or walk 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He needs to avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases and poor ventilation. He cannot work around unprotected heights or hazardous unshielded moving machinery. He can frequently handle and finger. He can understand, remember and carry out simple and routine tasks that may entail detailed but uninvolved instructions. He can sustain persistence and pace for unskilled work tasks in a nonproduction-paced work setting. He can occasionally interact with coworkers and supervisors but cannot interact with the public in the performance of job duties. He can adapt to normal changes in an unskilled work setting.

(*Id.* 21). The ALJ found that although Mr. Lamar could not perform his past relevant work, he could perform work as a bagger, stock checker, or sorter. (*Id.* 26-27).

Following the ALJ's decision, Mr. Lamar filed an appeal with the Appeals Council. (*Id.* 246-48). The Appeals Council denied his request for review, leaving the ALJ's decision as the final decision of the Acting Commissioner. (*Id.* 1-3). Because Mr. Lamar has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 423(d) and 1382c(a) rests on the claimant. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); *Roth v.*

*Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The SSA has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R. §§ 404.1520 and 416.920; *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Commissioner must evaluate:

> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (citations omitted); *see also Perks v. Astrue*, 687 F.3d 1086, 1091-92 (8th Cir. 2012).

### III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (quotation omitted). "Substantial evidence is less than a preponderance [of the evidence]," in that it merely requires that a reasonable person find the evidence adequate to support the Commissioner's decision. *Id.* (quotation omitted); *see also Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The reviewing court must find deficiencies that significantly undermine the ALJ's determination to reverse and remand. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Significant inaccuracies or

incomplete analyses in the ALJ's opinion may, however, serve as a basis for reversal. *Draper*, 425 F.3d at 1130 ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." (quotation omitted)).

## IV. Discussion

Mr. Lamar raises one issue in his appeal before this Court. He argues that substantial evidence does not support the ALJ's RFC decision because the ALJ did not properly consider Mr. Lamar's daily activities, his symptom volatility, and a third-party function report. (Doc. 15 at 35-42). The Court finds that substantial evidence does not support the ALJ's RFC decision because Mr. Lamar has notable limitations performing the daily activities the ALJ relies on when dismissing his subjective complaints.

"A claimant's RFC is 'the most' that the claimant can do in a work setting despite [his] limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)(1)). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and [the claimant's] own description of [his] limitations." *Id.* (quoting *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016)). "In evaluating a claimant's subjective complaints, in addition to the objective medical evidence, the ALJ must consider (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Cornell v. Colvin*, No. 3:14-CV-05059-NKL, 2014 WL 7238006, at *6 (W.D. Mo. Dec. 17, 2014) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

A claimant's "ability to carry out daily activities must be assessed in light of the record-supported limitations on [his] ability to perform real-world work." *Reed v. Barnhart*, 399 F.3d 917, 924 (8th Cir. 2005). The Eighth Circuit "has repeatedly observed that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Id.* at 923 (quoting *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998)). Therefore, when crafting an RFC, the ALJ must consider not only the nature of the claimant's daily activities, but also "the quality of the [claimant's] daily activities and the ability to sustain activities, interests, and relate to *others over a period of time* and the frequency, appropriateness, and independence of the activities." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)) (emphasis in original). The Eighth Circuit remanded the ALJ's decision when the "ALJ's conclusion lacked substantial evidentiary support because the record revealed 'notable' limitations of the claimant's ability to perform many of the activities relied upon by the ALJ." *Leckenby*, 487 F.3d at 634 (citing *Reed*, 399 F.3d at 923).

The ALJ found that Mr. Lamar's "statements regarding the severity of his impairments and accompanying symptoms [were] . . . largely inconsistent with his activities of daily living" because he can:

> live with others, manage his personal care, clean, make his bed, fold laundry, sweep, mop, vacuum, roll silverware, attend bible study classes, go outside, go out alone, walk, ride public transportation, shop, pay bills, count change, handle a savings account, use a checkbook, watch television, read, spend time with others, talk on the telephone, and attend religious services.

(AR 23). This summary of Mr. Lamar's daily activities inaccurately captures Mr. Lamar's limitations doing real-world work. *See Reed*, 399 F.3d at 924. After a self-inflicted gunshot wound caused a traumatic brain injury, Mr. Lamar lived in a homeless shelter where support staff

monitored his daily activities. (*Id.* 22, 44, 355-58). For example, in a function report the ALJ references, Mr. Lamar wrote that he sweeps and mops on a rotating basis at the shelter, not daily. (*Id.* 334). This is confirmed by the other function report the ALJ references, which notes that Mr. Lamar needs staff prompting care for himself, requires encouragement to complete daily chores, cannot sit for an entire movie, and needs to be reminded of appointments. (*Id.* 355-58). Further, Mr. Lamar testified at his hearing that he fell and injured himself while cleaning at the shelter. (*Id.* 48). He also testified that he needs assistance when riding public transportation because he cannot figure out routes on his own. (*Id.* 45-46). The ALJ's list of Mr. Lamar's daily activities only references his daily activities while at the homeless shelter. (*Id.* 23). After the shelter temporarily discharged Mr. Lamar for smoking indoors, thereby rendering him homeless, the record does not address Mr. Lamar's ability to maintain these daily activities independently. (*See id.* 23, 44). The ALJ discredited Mr. Lamar's statements about his symptoms in part because of an inaccurate analysis of his daily activities, one that did not consider that "the record reveal[s] 'notable' limitations of [his] ability to perform many of the activities relied upon by the ALJ." *Leckenby*, 487 F.3d at 634 (citing *Reed*, 399 F.3d at 923). For this reason, the ALJ's RFC determination is not supported by substantial evidence.

Mr. Lamar also argues that the RFC decision is not supported by substantial evidence because the ALJ relied on the conservative nature of his treatment and did not properly consider a third-party function report. (Doc. 15 at 37-42). First, the ALJ did not err by categorizing Mr. Lamar's treatment as conservative because the record supports that his mental illnesses improved with medication and sobriety. (*See, e.g.*, AR 1150, 1167-68, 1171, 1453, 1457, 1461). While "one characteristic of mental illness is the presence of occasional symptom-free periods," Mr. Lamar consistently reported mood stabilization on medication. *Andler v. Chater*, 100 F.3d 1389, 1393

(8th Cir. 1996) (quoting *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987)); (*See, e.g.*, AR 1150, 1167-68, 1171, 1285, 1453, 1457, 1461). Second, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Mr. Lamar admits that Ms. Alexandra Stephenson's report is a nonmedical source, so the ALJ was not required to articulate how she considered that evidence. (*See* Doc. 15 at 39). Nonetheless, this Court finds that the RFC is not supported by substantial evidence because of the inaccurate evaluation of Mr. Lamar's daily activities.

## V. Conclusion

For the reasons set forth herein, the Court finds the Acting Commissioner's determination that Mr. Lamar was not disabled is not supported by substantial evidence in the record. The decision is reversed and remanded for further consideration and development of the record.[2] Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Acting Commissioner is reversed and remanded for further consideration and development of the record, as set forth herein.

Dated this 25th day of August, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge

---

[2] If the Acting Commissioner's decision is reversed, the case should ordinarily be remanded for further proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quotation omitted). An immediate finding of disability is warranted only "if the record overwhelmingly supports such a finding." *Id.* (citation and quotation omitted).